THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
KENNETH EUGENE ZACHMEIER, Defendant and Appellant.

No. 11352.
Submitted April 4, 1968. Decided June 11, 1968.
441 P.2d 737.

Berger, Anderson & Sinclair, Billings, Arnold A. Berger, (argued), Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, Charles Joslyn, (argued), Asst. Atty. Gen., Helena, John L. Adams, Jr., (argued), County Atty., Billings, Harold F. Hanser, Deputy County Atty., Billings, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant from a conviction for second degree murder.

The appellant, Kenneth Eugene Zachmeier, was charged with the murder of his wife. The death of Mrs. Zachmeier first came to light on the afternoon of October 16, 1966, when defendant called his employer and friend, Guy Reese, from a bar in Billings, Montana, and asked Reese to come down and talk to him. When Reese arrived he found defendant drinking near the bar. The defendant told him that he thought he had killed his wife. Mr. Reese did not believe this but the defendant kept

insisting; finally Reese said that if defendant really thought he had killed his wife, he would call the sheriff's office and send an officer to defendant's apartment. Reese then called the sheriff's office. When the officer, Deputy Sheriff Howard Moe, arrived at the bar Reese told him why he had called. Mr. Moe approached the defendant and asked him what was this between him and his wife. The defendant replied, "I have killed my wife." The officer asked him where and how; defendant said he had choked her in their bedroom, and she was there now. Mr. Moe then asked the defendant to stand up and the officer frisked him. The officer next asked the defendant to take him to defendant's wife. The officer drove defendant and Reese to defendant's home. Defendant directed the officer to a bedroom. Defendant said he had locked the door. He gave Officer Moe a pair of manicure scissors and Officer Moe opened the door with them. Inside Officer Moe found a body which defendant identified as that of his wife. Officer Moe testified that he then advised defendant of his constitutional rights. At this time Deputy Sheriff James Meeks was summoned. The defendant was taken to the county jail, he was questioned by Officer Meeks and a detailed written "statement" or "confession" was made by him.

Prior to the trial of this matter defendant moved to suppress the written statement. The court reserved ruling on the motion at that time. Before the opening of the prosecution's case the motion was renewed. At that time the court denied the motion "with leave to renew it" at the time the statement is offered. When the statement was offered into evidence, the court determined that it was inadmissible. However, during the course of the prosecution's opening statement, the county attorney had told the jury of the making of the statement and its contents.

On this appeal defendant makes 6 specifications of error, being that the court erred (1) in allowing the endorsement of witnesses; (2) in failing to grant the defendant a continu-

ance to examine the witnesses endorsed; (3) in allowing Deputy Sheriff Howard Moe to testify to statements made by the defendant; (4) in failing to grant the motion to suppress the written "statement" or "confession" of the defendant, prior to the County Attorney's opening statement; (5) in permitting the County Attorney to comment on the details of the "statement" or "confession" in his opening statement; and (6) in its instruction to the jury on the question of "intent."

Hereafter it will appear that specifications 4 and 5, with regard to the written "statement"or "confession" and the county attorney's comment on the details thereof in his opening statement, will be crucial to this appeal and require that a new trial be ordered, but to preface that discussion we shall first take up specification 6.

The court instructed the jury: "The question of the specific intent to take life need not enter into the killing at all in order to make it murder in the second degree." Defendant concedes that this instruction has been approved by this Court. State v. Chavez, 85 Mont. 544, 281 P. 352; State v. Dillon, 125 Mont. 24, 230 P.2d 764. He now asks us to reverse that ruling.

Sections 94-2501 and 94-2502, R.C.M.1947, were copied from California. California adheres to the same rule as Montana. People v. Jones, 160 Cal. 358, 117 P. 176 (1911); People v. Curry, 192 Cal. App.2d 664, 13 Cal.Rptr. 596. Defendant provides no reasoning which convinces us that this Court and California were or are in error. We decline to overrule the established law on that issue.

The next question with which we shall deal is defendant's specification 3. The issue raised is, at what point in time did it become necessary for Officer Moe to advise defendant of his constitutional right?

To begin with, after a close reading of Miranda v. State of Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we feel that the underlying test of admissibility of

statements, admissions or confessions is still voluntariness. The requirements of Miranda are a means to this end.

Defendant asserts that the investigation focused on him when Mr. Reese told Officer Moe the reason for the call. It is further asserted that defendant was in custody at least at the time of the frisk. Therefore, defendant contends that the Miranda warnings of his constitutional rights should have been given right away. Since they were not so given, it is asserted that none of the statements made by defendant to Officer Moe are admissible.

The State's position on this point is: that Officer Moe did not know a crime had been committed and therefore there could be no focus; that this was just part of the investigatory stage and the accusatory stage was not reached until there were disclosed physical facts indicating a crime had actually been committed; that this was not an in-custody interrogation. State ex rel. Berger v. District Court, etc., Mont., 432 P.2d 93 (1967).

The line between the investigatory and the accusatory stages of a criminal proceeding is never easily determined. Here, the water is further muddied because there is no knowledge at this point of a crime being committed. We find the state's view to be the proper one. We cannot say, under the facts in this case, that when a policeman walks into a bar and is told a story by a person drinking at the bar, this is sufficient to begin the accusatory stage of a criminal proceeding. It is enough for the officer to begin investigating the purported facts.

Because of the difficulty in doing it, we do not rely alone on our determination of the beginning and end of the investigatory stage. Rather, in deciding the issue, we find the reasoning in Miranda important.

The Supreme Court said, in reference to the cases before it in Miranda, "They all thus share salient features—incommunicado interrogation of individuals in a police-dominated atmosphere

* * *." Miranda v. State of Arizona, 384 U.S., p. 445, 86 S.Ct., at p. 1612.

We also find it pertinent that the court points out the police manuals say privacy is "the 'principal psychological factor contributing to a successful interrogation'." Miranda v. Arizona, supra, 449, 86 S.Ct. 1615.

The court further says "To be alone with the subject is essential to prevent distraction and to deprive him of any outside support." Miranda v. Arizona, supra, 455, 86 S.Ct. 1617.

The court was concerned with overcoming the exercise of one's free will. These factors are not present in this case. The first statements were given in a bar, with a friend a short distance away. This case is completely devoid of police back room pressures at this point.

Further on the court in Miranda says "the defendant was thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures." None of the procedures frowned upon by the court in Miranda are present here.

We realize that the application of Miranda is not restricted to cases of back room police interrogations. The above quotes are included to show that the object of the rules in Miranda is to be sure a statement is voluntary and to show the circumstances which have led in the past to statements of questionable voluntariness. The situation here does not fit the reasoning of Miranda in that respect. Here we have different circumstances. We have the factors of no oppressive police knowledge of the commission of a crime, the locale in which the statements were made and the presence of a friend. These factors tend to refute any assertion that the statements were not voluntary. It was not an in custody interrogation but an investigation.

It appears to us that the Supreme Court has anticipated this type of case in Miranda itself. "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police

262

to offer a confession or any other statement he desires to make." Miranda v. Arizona, supra 478, 86 S.Ct. 1630. The situation here is very similar. We do not think the presence of the intermediary, Mr. Reese, makes this a manifestly different situation.

We now move to the issues raised by specifications 4 and 5, being whether the written statement made after defendant was given the warning of his constitutional rights is admissible, and if not admissible, whether it was reversible error for the County Attorney to comment to the jury on the making of, and contents of, the written statement.

■ It is asserted by defendant that he was not clearly advised of his right, if indigent, to court appointed counsel prior to any questioning. The burden is on the prosecution to show that the defendant was warned and made a knowing and intelligent waiver. Defendant's position is, to have a knowing and intelligent waiver, the statement of his rights must be such that it is clearly understandable.

■ It is asserted that the language used, which was not the language of Miranda, did not clearly state defendant's right to court appointed counsel. Although the exact words of Miranda need not be present, the substance of the warning must be as set out in Miranda. "* * * [O]nly by effective and express explanation to the indigent of this right [to court appointed counsel] can there be assurance that he was truly in a position to exercise it." Miranda v. Arizona, supra 473, 86 S.Ct. 1627.

■ From a reading of the transcript we cannot tell if the warning, given clearly and understandably, conveyed the substance of the constitutional right. The burden is on the State to show a knowing and intelligent waiver and they have not carried that burden. Consequently, the statement was properly excluded.

■ We now come to the issue of whether it was reversible error for the County Attorney to tell the jury about the state-

ment made by defendant and its contents. Defendant's position is that since the statement itself is inadmissible, it cannot be commented upon. We agree.

It is asserted that the comments were not prejudicial. The statement contained this account of the killing: "I called her on the phone and asked her if I could come out and talk things over with her, this was about 1:30 this afternoon. She at first said she did not want to see me, but then she said to come on out. We started to argue. She accused me of running around. I asked her not to argue and fight. I begged and pleaded with her to go to bed with me. She finally agreed but during the sexual act I could tell that she was only doing it to please me. After completion of the sexual act we began arguing again. She began to dress and told me to get out and go down to the South Side. One thing led to another and I busted her in the nose. We began wrestling on the bed and I tried to choke her with my hands. I then grabbed a silk stocking and tied it around her throat. I wasn't sure she was dead and I kept listening for a heart beat. I could not be sure she was dead so I went into the kitchen and got a butcher knife and pushed it into her heart. I listened for a heart beat so I left the house got into my car and went to the Lobby Lounge * *
*." The substance of this account and the fact that defendant made it, was related to the jury in the State's opening statement. We do not think that the jury would completely disregard this detailed admission of guilt.

We realize that the County Attorney thought the statement would be admitted when he made his opening statement. Further, the court properly advised the jury not to consider statements of counsel as fact. However, the fact that there was no malice or intentional disregard of defendant's rights in the opening statement does not expunge the damage.

We should like to make a comment at this point with regard to our holding. While we may not agree with all the rulings of the Supreme Court of the United States in the field

of criminal law, as to warnings required to be given to indigents as to their right to counsel at such an early stage, yet this is the law of the land and this Court, as well as all other courts, must abide by it.

As to specifications I and 2 they will not arise on a new trial so we do not discuss them.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.