No. 12101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ESKO K. RUONA,

Defendant and Appellant.

---

Appeal from:   District Court of the Thirteenth Judicial District,
               Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams, Jr. argued, Billings, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
David V. Gliko, Assistant Attorney General, argued, Helena,
Montana.
Harold F. Hanser, County Attorney, Billings, Montana.
Ernest F. Boschert, Deputy County Attorney, argued,
Billings, Montana.

---

Submitted:   April 20, 1972

Decided: JUL 2 0 1972

Filed:   JUL 2 0 1972

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a jury verdict and judgment of conviction of the crime of criminal possession of dangerous drugs from the district court of the thirteenth judicial district, Yellowstone County.

On April 1, 1971, at approximately 5:15 a.m., defendant Esko K. Ruona was arrested for driving the wrong way on a one way street in the city of Billings. After stopping defendant, the patrolman parked directly behind defendant's vehicle. Before the officer could take further action, defendant slid over from the driver's side to the passenger side of his vehicle, crawled out of the car on his hands and knees, and then proceeded to walk over to the police car. Defendant had no driver's license. He was transported to the Billings Police Station for booking on the two traffic offenses. The police station was several blocks from the scene of the arrest.

At the police station during the booking procedure and prior to posting bond, defendant emptied his pockets. Among the personal possessions of defendant there was a small plastic capsule with a hypodermic needle stuck through it.

After the defendant posted bond, the arresting officer volunteered to transport defendant to wherever he wished to go. Defendant accepted the ride and the officer returned defendant to the general area where his car was parked. The officer then returned to the car which defendant had been driving when arrested. While examining the pavement area under the passenger side where defendant made his exit from the car, he found two objects--a plastic bottle and a plastic bag. Both the bottle and the bag contained drugs, which defendant is now charged with having in his possession. The officer took the bottle and bag to the police

station where they were placed in the evidence locker, along with the needle defendant had left at the station when booked. On the following day, April 2, 1971, defendant was arrested for possession of dangerous drugs.

Trial was had on May 10, 1971, resulting in a jury verdict of guilty on May 11, 1971.

At trial, it was developed that the car defendant was driving on April 1, 1971, had been borrowed from a friend. Testimony of the arresting officer indicated that although it was a cold morning, the plastic bottle and plastic bag found underneath the car were free from frost. It was noted at trial that a fingerprint found on the plastic bottle was not that of defendant, but there were other prints that could not be identified. The arresting officer also testified he had taken defendant to the vicinity of 805 N. 27th Street in Billings, after he made bail on the morning of the traffic arrest; and although defendant walked in the general direction of 805 N. 27th Street, he did not actually see him enter the house.

The state made reference to this house in its opening statement to the jury to the effect that drugs had been found at 805 N. 27th Street. Throughout the trial repeated attempts were made by the state to introduce evidence concerning the house, which was characterized as a "hippy pad".

Defendant on appeal presents the following issues for this Court's examination:

1. The opening statement and trial reference to the residence at 805 N. 27th Street, when no facts connecting defendant to the residence were proven.

2. Introduction of the hypodermic needle into evidence without connecting it to the crime.

3. Lack of evidence to convict defendant of the crime of possession.

4. Challenge to several jury instructions, i.e., the giving of Instructions 14 and 16 and refusal of defendant's offered Instruction 8.

We look first to the contention that defendant was prejudiced by the state's injection of references to the residence at 805 N. 27th Street.

In reviewing the record, it appears the state was attempting by res gestae or proof of general circumstances to place defendant at the residence in question on the night of his traffic arrest or very near in time to the arrest. The house is in the same general area where defendant was stopped; and the arresting officer returned defendant to that area after the processing at the police station. This appeared to be an attempt to connect defendant to a known place of drug use, as a general circumstance surrounding the actual possession from which the jury could draw an "inference" as set forth in State ex rel. Glantz v. Dist. Court, 154 Mont. 132, 142, 461 P.2d 193 (1969), more recently discussed and approved in State v. Anderson, _____Mont._____, _____P.2d_____, 29 St. Rep. 436.

In Glantz the Court said:

"* * * this Court does not mean to imply, however, that the state is relieved of the burden of showing that defendant knew the prohibited substance was in his possession. Such knowledge can be proved by evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that he knew of the existence of the prohibited substance at the place where it was found." (Emphasis supplied)

This theory was initially presented to the jury in the state's opening statement. At that time, the state intended to introduce evidence later in the case to support that theory. However, as the record discloses, such offer was denied. After the initial opening statement and up to the time that the offer was denied, the record discloses numerous references to the

address 805 N. 27th Street, which defense counsel repeatedly objected to, and in most instances was sustained. We note that defense counsel presented nine objections at trial and was sustained on eight of them. We also note that defense on several occasions during cross-examination questioned witnesses in regard to the premises. Reviewing the entire record and the discussions and arguments on the objections, we feel that the court sufficiently protected defendant's rights and cautioned the state to submit its offer, which when presented was denied in this language:

> "Gentlemen, it appears to me that from whatever angle you approach this, from res gestae or proof of a collateral fact or a part of general circumstances making up circumstantial proof of the State's case, that the decision is largely discretionary with the Court, to be made in the light of all circumstances appearing, and after considering the Offer of Proof and the general circumstances appearing in this case, I think that the Court is required as a matter of fairness to the Defendant at this time to deny the Offer of Proof.

> "In effect, so far as the State is concerned, this will place some very severe limitations on the use of 805 North 27th Street in further testimony in the case."

Immediately following this ruling the state rested its case.

As to the opening statement when viewed in light of the course of the trial, we find that there was simply a failure of proof by the state of a relationship between defendant and the named premises. The opening statement itself does not constitute evidence against defendant. It was an expression of the theories which the prosecution would attempt to prove in the evidence to be subsequently produced. We do not condone broad, unproven statements and do not suggest that an opening statement should be free from a test of its prejudicial aspects as was applied by this Court in State v. Zachmeier, 151 Mont. 256, 441 P.2d 737.

Zachmeier held that the damaging opening statements of prosecution were not of the nature that the jury would completely

- 5 -

disregard. Too, we are not unmindful of this Court's admonitions in State v. Langan, 151 Mont. 558/568, 445 P.2d 565 and cases cited therein. Furthermore, as stated in Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L ed 2d 171, cited in _Langan_, the test remains:

> "Is there a reasonable possibility that the inadmissible evidence might have contributed to the conviction?"

In the instant case the offered evidence was denied admission by the court after eight of nine objections by the defense counsel were sustained.

The opening remarks of this case do not compare to the gravity of the remarks in _Zachmeier_, which involved a confession of guilt, inadmissible under the Miranda rule. Therefore, we hold that these references in the opening statement and during trial were not of such a nature as to contribute to the defendant's conviction.

Defendant's second issue questions the admission in evidence of the hypodermic needle which defendant left at the police station and argues that such needle was not connected to the crime, thus defendant was prejudiced by its admission.

Reviewing the record we find two established facts that defense has not refuted. (1) Defendant admitted at trial that he had received treatment at the Montana State Hospital at Warm Springs for drug abuse prior to the incidence of his arrest. (2) He admitted at trial that he had used a similar type needle to shoot drugs at an earlier unspecified time but during the course of events leading up to his first treatment at Warm Springs.

The test of relevancy of this evidence to the crime of criminal possession of drugs is stated in McCormick, _Law of Evidence_ (1954), at p. 317:

"What is the standard of relevance or probative quality which evidence must meet if it is to be admitted? We have said that it must 'tend to establish' the inference for which it is offered."

Defendant's second issue expands into his third issue, which questions whether the evidence shows the defendant was in possession of dangerous drugs when in fact the drugs were lying on a public street beneath a borrowed automobile he had been driving.

Defendant further argues the identifiable fingerprint found on the plastic bottle was not his. However, this ignores the fact that upon analysis by the Billings police department and the Federal Bureau of Investigation, it was determined that there were six latent fingerprints of which only one was identifiable and that one was not that of defendant.

In the evidence produced at trial and offered to establish defendant's possession of the drugs, we have the arresting officer's testimony that he found the drugs beneach the car defendant had been driving; and that the bottle and plastic bag containing the drugs did not have frost on them, while the surrounding area was covered with frost. From this a jury could reasonably decide the bottle and bag had not been lying on the street the entire night, but had been placed there recently.

Evidence linking defendant's constructive possession of the drugs is found in the arresting officer's testimony in regard to his stopping of defendant for the traffic offense. The officer testified that defendant after stopping proceeded to crawl out of the passenger side of his vehicle on his hands and knees; that although he was unable to observe defendant's hands for a brief moment while defendant was crawling out of the car, he was able to determine that defendant's hands did touch the ground. Further, that upon returning to the car and finding the drugs beneath the car, it was his observation that the tires of defendant's vehicle

would have run over and crushed the bottle and bag if these objects had been on the street before defendant pulled over to the curb.

On the basis of evidence produced at trial and the circumstances under which the drugs were found, we feel the rationale of Glantz, heretofore discussed, sufficiently answers defendant's second and third issues questioning the admissibility and weight of the evidence. There was sufficient evidence submitted to the jury for it to find constructive possession and we find nothing in defendant's arguments testing the evidence to disturb the verdict.

As to defendant's issues pertaining to instructions given or refused, we have examined the record and find no error.

Court's Instruction 14 was taken verbatim from section 93-1301-4, R.C.M. 1947, which states:

> "When an inference arises. An inference must be founded:
>
> "1. On a fact legally proved; and,
>
> "2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of the business, or the course of nature."

This instruction was cited with approval by this Court in State v. Barick, 143 Mont. 273, 283, 389 P.2d 170.

Court's Instruction 16 defines constructive possession as: "when a person has the intent to have, and has knowledge that he has capability of control although not in actual physical control but such thing is under his dominion." This instruction is grounded on the decision of this Court in State v. Trowbridge, 157 Mont. 527, 487 P.2d 530.

Defendant's offered Instruction 8 was refused, but defendant argues on appeal that the jury should have been instructed on what constituted abandonment. We find that the facts of this case do not warrant an instruction on abandonment and thus the trial court was not in error in refusing defendant's Instruction 8.

The judgment of the trial court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.