**STATE of Missouri, Respondent,**

v.

**James Eugene LEWIS, Appellant.**

**No. KCD 27018.**

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1975.

Kenneth K. Simon, Simon & Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ANDREW J. HIGGINS, Special Judge.

James Eugene Lewis, charged by information alleging that he did "wilfully, feloniously and knowingly have in his possession a quantity of Cocaine Hydrochloride, a drug designated by the Division of Health to be a Schedule II controlled substance," was convicted by a jury which returned a verdict, "We, the jury, find the defendant guilty of possession of a controlled substance but are unable to agree upon his punishment." The court fixed defendant's punishment at ten years' imprisonment and sentence and judgment were rendered accordingly. §§ 195.017, subd. 4(1)(d), 195.-020, 195.200, subd. 1(1), RSMo 1969, V.A. M.S.; Rule 27.03, V.A.M.R.

Appellant's points I and II go to the sufficiency of evidence to sustain the charge and warrant its submission to the jury.

On Sunday, May 28, 1972, Brad C. Lutz was an employee of Continental Airlines at its cargo sales and service facility at Kansas City Municipal Airport in North Kansas City, Clay County, Missouri. At approximately 7:00 a. m. he received a parcel, shipped by Gloria Lewis to George Black, State's Exhibit 2, and its attached waybill, State's Exhibit 1, via Continental's flight from Los Angeles which had arrived between 6:00 and 6:30 a. m. The parcel, a blue tackle box, was unusual in that it was very light and had been sealed and locked with a bicycle cable and padlock. The minimum freight charge for a parcel up to one pound in weight was about $12 plus tax; a fifty-pound parcel would cost the same. He commented at the time that "it must be something pretty valuable," and was surprised to see that no value had been declared on the waybill.

At about 11:00 a. m. defendant, a black man, dressed in blue jeans and cut-off jacket decorated with insignia patches and wearing colored glasses, arrived on a motorcycle, "pretty well-equipped, pretty fancy, a lot of chrome," bearing California license

plates. He was accompanied by a person described by Mr. Lutz as a white woman. In conversation between defendant and Mr. Lutz, defendant stated he had ridden the motorcycle from California to Kansas City. After they had "chit-chatted" about his motorcycle, defendant said, "Hey, man, have you got a blue tackle box" for Mr. George Black. He was anxious to get it and go. Mr. Lutz, becoming suspicious due to the foregoing, delayed the delivery by faking a telephone call to Los Angeles, telling defendant the parcel had not arrived and that it would be on the next flight to arrive at 12:30 or 1:00 p. m. Defendant left, Mr. Lutz called the Kansas City Police Department for assistance and was advised that they could do nothing and that he should call his local airport security. Mr. Lutz, acting on his belief that he had authority of the Civil Aeronautics Board to do so, opened the parcel and found State's Exhibit 3, a bottle labeled Cocaine Hydrochloride. Mr. Lutz again called the Narcotics Division in the Kansas City Police Department and was advised to reseal the parcel and wait for defendant to claim it. Defendant previously had signed the name "George Black" to the waybill. Defendant returned at 3:20 p. m., after Mr. Lutz had left for the day, again called for the parcel and, upon receipt of it, again signed the name "George Black" to the waybill.

John Dawson, an officer in the Narcotics Unit of the Kansas City Police Department, went to the airport around 12:00 noon where he was shown the opened parcel and the bottle of cocaine hydrochloride. He directed the package to be resealed and waited for it to be claimed. Defendant returned, claimed the package, indicated no question as to its weight, and took it to an automobile in which one Wanda Murray was seated. As he placed the package on the back seat, Officer Dawson arrested him and he identified himself as James Lewis. As defendant walked to the car, Officer Dawson observed him to be smiling. Upon arrest, defendant's facial expression changed to "astonishment, to start with,

then kind of a depressed look  *  *  *." Defendant denied ownership of the box and also denied shipping the box.

Alfred Lomax, also an officer in the Vice Unit of the Kansas City Police Department, arrived at the airport with Officer Dawson. After viewing the parcel and bottle and seeing the parcel resealed, he, too, engaged in surveillance of the parcel and observed defendant when he obtained the parcel and proceeded to an automobile where he was arrested by Officer Dawson. Officer Lomax stated he had observed a motorcycle disabled on the Broadway Bridge, which was claimed to be defendant's as the parties proceeded to the police station.

Edward Covey, a police chemist, tested the contents of the bottle labeled Cocaine Hydrochloride and confirmed the contents to be 18.2 grams (18,200 milligrams) of cocaine hydrochloride. There are 20 milligrams in the ordinary "hit" or street sale of cocaine; and, according to Officer Dawson, a street hit sells for $10.

The foregoing concluded the State's case; and, after an unavailing motion for directed verdict of acquittal, defendant proceeded with his case, which is quoted from his brief:

"The defendant opened his case with the testimony of Doris Howell, a registered nurse, who testified that on May 28, 1972, she had contact with defendant and Wanda Murray, when the defendant was having difficulty with his motorcycle. Claude Wright testified that the defendant contacted him with respect to his motorbike for assistance in its repair. LeRoy Reed, being called by the defendant, testified that he was employed by David Beatty Stereo and accompanied defendant and others to the races at Indianapolis in May of 1972, including George Black. The defendant left Indianapolis May 27 with Wanda Murray. Wanda Murray testified that defendant's motorcycle had previously been shipped into Kansas City on TWA and produced a waybill. She further testified that she was the person who accompanied Mr. Lewis to the

airport on the morning of May 28. George Black, being called by the defendant, testified that he was a resident of Los Angeles, California, formerly residing in Indianapolis, that he was an honorably discharged Veteran, working as an assistant librarian in Los Angeles, who stated that State's Exhibit No. 2, the tackle box, looked like his and he had made arrangements to have it sent to Kansas City with equipment, through a party named Gloria Lewis living in Los Angeles, from his then residence in Indianapolis. He further testified that he had had some difficulties in his relationship with Gloria Lewis prior to his request that she ship the box and tools to him in Kansas City as he had planned to be in Kansas City for their arrival. When it became apparent that he would be unable to arrive in time to receive the shipment, he asked the defendant to pick them up for him. Black stated that he knew nothing of State Exhibit No. 3, the cocaine, but that he had requested air freight shipment in order that the tools arrive in Kansas City quickly."

Upon cross-examination, Mr. Black stated the box was to have contained tools consisting of "12 sockets, or 10 sockets and a ratchet and allen wrenches" weighing ten or twelve pounds.

Upon resting his case, defendant again moved, unsuccessfully, for a directed verdict of acquittal.

■ Appellant contends (I) that the court erred in failing to sustain his motion for a directed verdict of acquittal at the close of the State's case. Error, if any, in this respect was waived when defendant introduced evidence in his own behalf. *State v. Green,* 476 S.W.2d 567, 569[2] (Mo.1972); *State v. Thomas,* 452 S.W.2d 160, 162[4] (Mo.1970); *State v. Johnson,* 447 S.W.2d 285, 286[1] (Mo.1969); 9A Mo.Dig., Criminal Law, ⬅901.

■ Appellant contends (II) that the court erred in failing to sustain his motion for directed verdict of acquittal at the close of all the evidence "as there was insufficient evidence as a matter of law to warrant submission to the jury." He argues that the testimony of George Black, "together with evidence from the police officers at the scene as to the defendant's manner and behavior militate against submission as the standard of knowing possession could not be met * * *." Appellant's argument is thus limited to the issue of defendant's knowing possession of the cocaine hydrochloride and it fails to note the significance of all the evidence on that issue.

The totality of evidence shows that defendant did not use his own name when signing the waybill for the tackle box; that he was in a hurry and exhibited anxious, nervous mannerisms when he first came to obtain the box; that upon receipt of the box he showed no concern about its lightness; that lightness of the box was the source of Mr. Lutz's suspicion; that when defendant left with the box he was smiling and, upon being caught by the police, his look changed to astonishment and depression; that defendant's lack of concern about the lightness of the box was emphasized and amplified by his own evidence that the box was to have contained tools weighing ten to twelve pounds. Such proof is remarkably similar to that held sufficient to make a submissible case of knowing possession in *State v. Burns,* 457 S.W.2d 721, 725[3, 4] (Mo.1970). Appellant's citation of *State v. Berry,* 488 S.W.2d 667 (Mo.App. 1972), is readily distinguished in that "there was no evidence that appellant had either actual or constructive possession or control of any of the marijuana at any time. She was never seen physically to touch or possess the luggage containing the marijuana. * * * Her conduct was not such that an inference of knowledge could be fairly drawn." 488 S.W.2d l. c. 669.

■ Appellant contends (III) that the court erred in denying defendant's challenge for cause upon *voir dire* examination of jury panelist George Ellett. His argument is that since Mr. Ellett had been in the reserve unit of the Excelsior Springs

Police Department for several years, he was "so imbued with a philosophy of law enforcement that it is impossible for him to be impartial."

Mr. Ellett, a retired reserve police officer of 26 years' experience, when asked if he could try the case fairly and impartially in light of his police experience, answered unequivocally that he could. In such circumstances, defendant quite properly "readily admits that in similar cases, the Courts of this state have held that no prejudice results from a mere affiliation with a law enforcement agency, State v. Hamilton, 102 S.W.2d 642 at 647 [Mo.1937]."

In addition to appellant's concession of the law adverse to his argument, there is nothing in this record to show other than that Mr. Ellett was free from prejudice and able to accord the accused a fair and impartial trial. State v. Wilson, 436 S.W.2d 633 (Mo.1969). Accordingly, there is no abuse of discretion upon which to disturb the trial court's ruling on the challenge for cause. State v. Allen, 485 S.W.2d 28 (Mo.1972); State v. Harris, 425 S.W.2d 148 (Mo.1968).

■ Appellant charges the court erred (IV) in admitting over defendant's objection evidence of the street price of cocaine. His argument is that a possession case may be made on any measurable amount of contraband, no matter how small, State v. Young, 427 S.W.2d 510 (Mo.1968); and that admission of evidence of price is thus immaterial and irrelevant in a possession case and permits an inference of the more serious crime of sale under Section 195.200, subd. 1(4), RSMo 1969, V.A.M.S.

This was first mentioned in the prosecuting attorney's opening statement when he stated the evidence would show that defendant possessed 18.2 grams of cocaine which would make between 900 and 1800 street "hits" or doses. A defense objection was sustained, after which the prosecuting attorney stated that such evidence would be to show quantity, and that "there will be no evidence whatsoever of any attempts by this defendant to sell it." He stated also that street purchases go "for about $10 a dose." Defendant again objected and was overruled. The second mention of value came in the testimony of Officer Dawson when he stated over objection that it was incompetent, immaterial and irrelevant, that "about the smallest amount you can buy on the street would be what is called a dime hit or a ten dollar hit." The third mention came in the testimony of Mr. Covey who stated over objection of improper foundation that an ordinary street hit contained 20 milligrams of cocaine.

The foregoing references refute any suggestion that the jury would infer that the State was presenting a case of sale of drugs; and the case law supports the admission of evidence of value of the narcotics in question in possession cases.

The test of relevancy of the evidence of the crime of criminal possession of drugs is whether the evidence tends to establish the inference for which it is offered. State v. Ruona, 159 Mont. 507, 499 P.2d 797, 801[5] (1972). Proof of an extremely high value of the substance is relevant in discrediting defendant's claimed lack of knowledge, United States v. Glaziou, 402 F.2d 8 (2nd Cir. 1968). See also Gaylor v. United States, 426 F.2d 233, 235[2] (9th Cir. 1970); and see United States v. Hernandez-Valenzuela, 431 F.2d 707[2] (9th Cir. 1970), for a flat holding that proof of value of narcotics is admissible in possession cases.

■ Appellant contends (V) that the court erred in failing to take evidence on defendant's motion to suppress and failing to sustain or grant a hearing on such motion. He argues that "no such hearing was afforded and no evidence heard, making preservation of a record on the question of the propriety of the search and the subsequent seizure impossible * * *."

It appears from appellant's brief that "this matter had previously been tried * * * before the Honorable James Rooney. During that prior trial, a motion was heard, evidence taken and the motion over-

ruled"; and when he presented his motion at the second trial, defendant gave a summary of the evidence on the issue and stated, "the evidence was totally submitted on that issue" when previously heard, and concluded this was the same motion and issue previously overruled by Judge Rooney. Appellant does not contest the merits of the prior pretrial ruling. In such circumstances there was no error in failing to accord a second evidentiary hearing. The situation is the same as with a ruling on such a motion by an assignment or presiding judge being followed by another judge at trial. Any claim of error can be charged against the ruling on the motion on the record made at that time, irrespective of which judge made it. See the procedure described in *State v. Bryson*, 506 S.W.2d 358, 361 (Mo.1974); and see also *State v. Gailes*, 428 S.W.2d 555, 557, 559[5] (Mo.1968).

■ Appellant charges the court erred (VI) in excluding the statement made by defendant, upon questioning, to Officer Lomax denying ownership of the tackle box or knowledge of its contents, and rejecting the offer of proof covering such testimony. Appellant asserts the offer "indicates that Lomax's answers would have, if permitted, proved * * * defendant was merely picking up state's exhibit two for George Black * * *," and that such proof bore on the issue of defendant's knowledge. He argues that such answers were part of the *res gestae* under the rule in *State v. Hook*, 432 S.W.2d 349, 352[1, 2] (Mo.1968): " ' * * *res gestae* refers to those exclamations and statements made by either the participants, victims, or spectators to a crime immediately before, during, or immediately after the commission of the crime, when the circumstances are such that the statements were made as a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and to fabricate a false statement.' "

The statements in question do not fall within the rule. Spontaneity is the key to admission of such hearsay; and in this case defendant's reaction was not to the event itself but was due to the influence and questions of the police who intervened between the event and the utterance and had warned him of his rights. *State v. Hook, supra*, l. c. 353[5]. In addition, the answer sought by defendant's offer was cumulative to testimony adduced upon cross-examination of Officer Dawson when he testified that defendant told Officer Lomax that the parcel "was not his tackle box"; and that he also denied any ownership in the box and denied shipping it.

Appellant charges the court erred (VII) in giving Instruction No. III as a verdict-directing instruction "as it failed to fully instruct on the law permitting the jury to return a finding as to 'possession of a contraband substance' when in fact the defendant was charged with possession of cocaine hydrochloride, a schedule II controlled substance."

Appellant's argument sets out the instruction and directs the court's attention to Section 195.017, subd. 4(1)(d), RSMo 1969, V.A.M.S., but does not suggest in any way what is wrong with the instruction. Suffice to say that Instruction No. III is the same in substance as the verdict-directing instruction approved in submitting marijuana possession in *State v. Sledge*, 471 S.W.2d 256, 260 (Mo.1971); and it is also of the same substance as MAI–CR 14.10 now prescribed by Rule 20, V.A.M.R., for submission of narcotics possession cases.

Finally, appellant contends (VIII) that the verdict "is fatally defective and not responsive to the charge contained in the information and fails on its face to support the judgment of conviction being a special verdict not containing all elements of the offense charged."

■ The test of a verdict is that it must be sufficiently definite and certain that, on entry of a judgment thereon, it will bar further prosecution for the same offense. *State v. Saussele*, 265 S.W.2d 290, 294[9] (Mo. banc 1954); *State v. Jordan*, 285 Mo. 62, 225 S.W. 905, 907 (1920).

■ Defendant was charged with felonious possession of a named schedule II controlled substance in violation of Missouri's Narcotic Drug Act; there was no question that the named substance, cocaine hydrochloride, is a schedule II controlled substance; the verdict-directing instruction, No. III, dealt only with "possession of a controlled substance, to-wit: cocaine hydrochloride"; the form of verdict, Instruction No. IX, referred to "possession of a controlled substance as defined in Instruction No. 3," and the verdict found the defendant guilty of the charge under the mentioned instructions. Under such circumstances, the verdict is responsive to the charge and is sufficiently definite and certain as to the offense intended that a judgment thereon will bar further prosecution of defendant for this possession of cocaine hydrochloride, a schedule II controlled substance. *State v. Olinger,* 396 S.W.2d 617, 622[8] (Mo.1965).

Judgment affirmed.

All concur.