**STATE of Missouri, Plaintiff-Respondent,**

v.

**Hughie GREEN, Jr., Defendant-Appellant.**

No. 37432.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 31, 1976.

Robert C. Babione, Public Defender, Kent W. Fanning, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Nanette Laughrey, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard L. Poehling, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

Defendant-appellant, Hughie Green, Jr., was charged, tried and found guilty by a jury of burglary, second degree, and sentenced by the court as a second offender to nine years in the department of corrections. §§ 560.070, 556.280, RSMo 1969, V.A.M.S. He appeals. On this appeal he contends as his sole claim of error that he was precluded from effectively presenting his defense and was thereby denied a fair trial because the trial court erroneously excluded evidence of his exculpatory declarations which were "part of the res gestae." For reasons hereinafter stated, we affirm the judgment of conviction.

Since appellant does not question the sufficiency of the evidence, only those facts necessary for the disposition of the point raised on appeal need be stated. A jury could reasonably find the following.

On March 4, 1975, at approximately 12:30 p. m. Mr. Euin Hancock secured his home at 1430 East Gano Avenue in the City of St. Louis and left to vote in the primary elections. He was met at the polling place by a police officer who informed him that his home had been broken into. Upon returning home, Mr. Hancock found that the glass on the doors of the side entrance had been broken[1] and his house had been "ransacked." A subsequent check revealed that about twenty-nine dollars was missing.

Police Officers George Overby and Kurt Shrum responded to a radio dispatch and arrived at the Hancock residence at approximately 1:08 p. m. Only about one minute

---

1. The storm door glass was broken, as was a small glass section near the lock on the inside wooden door.

had elapsed between the radio call and the officers' arrival at the home. The officers first talked with a woman standing outside at the residence next door and then proceeded to the side entrance of the Hancock home. They found the inside door partially open, broken glass and a medium-sized rock inside the door. As the officers entered they observed a man, later identified as the defendant, "walking—running towards us from the interior of the building." Officer Shrum stopped him, placed him under arrest, handcuffed him and advised him of his rights. The defendant was taken to the living room area of the house and made to lie face down on the floor while the officers searched the rest of the house for another person. While the officers searched, the defendant "jumped up and ran out the kitchen door and down the street." He was chased and apprehended once again by the officers.

Trial began on June 24, 1975. Officers Overby, Shrum and Edward Meyer, a member of the canine unit who assisted in the search of the Hancock home and also in the subsequent chase of the subject, positively identified the defendant, Hughie Green, Jr., as the man that had been apprehended in the Hancock home. Officer Overby testified that, after being arrested, the defendant gave his name as Derrick Johnson. The defendant originally stated he was 16 years old and a resident of Decatur, Illinois, but later indicated that he was actually 18 years old and lived in the City of St. Louis. A subsequent identification check at the police station revealed that Derrick Johnson was actually the defendant, Hughie Green, Jr. On cross-examination, Officer Overby acknowledged that after being arrested the defendant made an additional "statement," other than the ones elicited by the prosecutor. Defense counsel attempted to elicit from Officer Overby the content of the statement. Upon objection, the court sustained the prosecutor's objection on the basis that the statement would be hearsay and self-serving. The court rejected defense counsel's contention that the statement was an admission and therefore admissible under an exception to the hearsay rule.

The defendant was the only witness for the defense. He admitted being present in the Hancock home but explained that he went to the Hancock home believing it was the home of a friend. He testified that he heard a noise and observed several youths jumping over a fence at the back of the house. Defendant further testified that he noticed the side door had been broken and was partially open, that he heard noise coming from inside the home, called inside and entered the home only after receiving no response to his calls. He indicated that the police arrived only 10 to 20 seconds after he entered the kitchen. Defendant testified that he immediately tried to explain his presence in the home to the officers but that they refused to listen and struck him, rendering him dizzy. Defendant admitted giving the officers a false name and trying to escape but explained that he did these things because he had previously been convicted of several felonies [2] and was afraid that the officers would not listen to him or believe his story.

The jury returned a verdict of guilty of second degree burglary as submitted in the instructions. On September 18, 1975, the court overruled defendant's motion for new trial and, allocution having been granted, rendered judgment in accordance with the jury verdict and pronounced his sentence at nine years in the department of corrections.

On this appeal appellant contends that he was "precluded . . . from fully and effectively presenting his defense," and was thereby denied a fair trial. In particular, he contends that the trial court erroneously precluded defense counsel from eliciting testimony from Officer Overby regarding certain exculpatory statements made by defendant to the arresting officers at the scene, thus preventing defendant from cor-

2. The amended information charged defendant with only one prior felony for purposes of the second offender act application. At trial the parties stipulated to that one felony. However, the defendant testified that he had previously pled guilty to three felonies.

roborating his own testimony with regard to the statements.[3]

At the time that defense counsel sought to cross-examine Officer Overby concerning the content of the "statements" made by the defendant upon his arrest, the prosecutor objected that evidence of what defendant said was hearsay and self-serving. A colloquy at the bench followed at which defense counsel argued vigorously for the admission of the "statements" on the ground that they were admissions and therefore admissible under an exception to the hearsay rule. The trial court sustained the objection, ruling that such an exculpatory statement was not an admission but a self-serving statement. On appeal, appellant contends that these exculpatory statements were admissible because they "were part of the res gestae."

■ We find no merit in the substance of appellant's claim of error on the basis of the record.

"The law is well settled that a defendant in a criminal case will not be permitted to make evidence for himself by adducing his self-serving declarations (when not a part of the res gestae) explaining his motives, designs, etc. . . ." *State v. Perkins*, 92 S.W.2d 634, 638 (Mo. 1936).

The "res gestae" exception permits the introduction of extrajudicial statements otherwise inadmissible as hearsay where the statements are demonstrated to have been spontaneously uttered, occasioned by the excitement surrounding the commission of the offense.[4] Appellant asserts that by

reason of the res gestae exception to the hearsay rule he was entitled to have Officer Overby testify as to exculpatory statements made by him when the officers first arrived. The key to the admission of such hearsay is spontaneity. *State v. Lewis*, 526 S.W.2d 49, 54 (Mo.App.1975). The burden was on the defendant to establish facts giving rise to the admission of the statements as part of the res gestae. *State v. Hemphill*, 504 S.W.2d 62, 63 (Mo.1974); *State v. O'Neal*, 436 S.W.2d 241, 244 (Mo. 1968). At trial the defendant made no offer of proof to show the content of the statement or that these statements were made under circumstances that would assure their truthfulness and warrant their admission as part of the "res gestae." In addition, the record does not indicate that the trial court was otherwise apprised that these statements were of a spontaneous nature,[5] occasioned by the excitement of the moment, rather than of the nature of a considered self-serving statement. See *State v. Crouch*, 339 Mo. 847, 98 S.W.2d 550, 554–555 (1936).

We have read the entire transcript and reviewed the briefs of the parties and all of the authorities relied upon. We find no prejudicial error.

The judgment of conviction is affirmed.

ALL THE JUDGES CONCUR.

---

**3.** It is not evident from the record what the statements were that were made to the arresting officers. At trial appellant testified that he began to explain his presence in the house to Officer Shrum as soon as the latter entered the house but that "[h]e wasn't listening what I was saying and he hit me . . . ." There is no other indication from appellant's testimony as to whether appellant ever made any other attempt to explain his presence to the arresting officers. Under cross-examination from defense counsel, Officer Overby acknowledged that after appellant had been arrested and advised of his rights while still in the house he made a statement.

**4.** See *State v. Hook*, 432 S.W.2d 349, 352 (Mo. 1968), for a discussion of the theory behind the res gestae exception to the hearsay rule.

**5.** The exculpatory nature of the offered statements "tends to the inference that excitation and spontaneity had given way to calculated considerations of self-interest." *State v. Pflugradt*, 463 S.W.2d 566, 573 (Mo.App.1971), citing *Riley v. State*, 50 Ariz. 442, 73 P.2d 96, 101 (1937).