No. 13470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STANDARD INSURANCE COMPANY,
a corporation,

                    Plaintiff and Respondent,

        -vs-

HAROLD L. STURDEVANT,

                    Defendant and Appellant.

---

Appeal from:   District Court of the Fourth Judicial District,
               Honorable Edward Dussault, Judge presiding.

Counsel of Record:

    For Appellant:

        Tipp and Hoven, Missoula, Montana
        Raymond Tipp argued, Missoula, Montana

    For Respondent:

        Raymond J. Fox argued, Missoula, Montana

---

                              Submitted:  April 19, 1977
                               Decided:  JUN 21 1977

Filed:  JUN 21 1977

_Thomas J. Kearney_
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This is an appeal from a nonjury judgment of the district court, Missoula County, in an action to recover on a promissory note.

Harold L. Sturdevant, appellant, entered into an agency-manager employment contract with Standard Insurance Company, respondent, in 1962. Under the terms of the contract, Sturdevant was appointed manager of Standard's agency in Missoula, Montana. He agreed to maintain the agency and recruit and train sub-agents, as well as personally procure insurance applications. The parties entered into similar contracts in 1963 and 1968 as to new business after those dates. Sturdevant also executed a promissory note in 1968 to repay loans made to him by Standard. Income derived from Sturdevant's contracts was to be applied to the note.

Standard sued to collect the balance due on the note and Sturdevant counterclaimed seeking vested renewals under the contracts, which he alleged were still in effect. In its reply to the counterclaim Standard alleged termination of the contracts.

The parties agreed to determine after trial the amount due each other based upon the termination date found by the district court. Judgment was entered in favor of Standard establishing September 15, 1969 as the termination date of the contracts and provided for further hearing, if the parties could not agree on the amounts due.

The only issue presented for review by Sturdevant is whether the district court erred in determining the agency-manager contracts were terminated on September 15, 1969. Sturdevant contends the contracts extended through 1971.

On August 14, 1969, Frank Burger, Sturdevant's supervisor with Standard, wrote this letter to Sturdevant:

"Dear Harold:

"This is to confirm our conversation of August 12, at which time you tendered verbal notice of intent to resign effective September 15. It is the purpose of this letter to acknowledge your intent.

"Once we have determined who the replacement will be, I will advise. I will appreciate very much your effort to make the transition a orderly and trouble-free one from a service standpoint.

"We'll be in touch. * * *"

Burger testified that on August 12, 1969, Sturdevant told him he intended to resign and was "throwing in the towel", and Burger accepted the resignation.

Sturdevant, on the other hand, testified Burger and he had disagreements during the conversation, but when Burger asked if he intended to resign, Sturdevant merely replied it might come to that. Sturdevant testified he did not intend to resign and he did not think his contracts and position as manager were terminated. Therefore, he ignored the letter.

Sturdevant's testimony was supported at trial by several agents in the Missoula office. Agent Swenson testified Sturdevant told him he would not resign; and agent Moffett testified Sturdevant showed him Burger's letter and said he did not resign. Sturdevant, however, did leave the office in September 1969 and according to Moffett, he never again worked as manager.

After Sturdevant left Standard's office, Burger testified he had no knowledge of any work performed by Sturdevant for Standard. Although Sturdevant took only personal family pictures when he left the office, Burger collected the rest of Sturdevant's property and later delivered it to him.

After his departure from Standard, Sturdevant opened another insurance office, hired new agents and had contracts with and was licensed to sell for other companies. He testified however, that he kept Standard's insurance in force and serviced Standard policies at his new office. There is no evidence he sold more insurance for Standard, after opening his new office.

In urging a different termination date than September 1969, Sturdevant makes three arguments:

(1) The letter from Burger to Sturdevant did not comply with contract provisions allowing termination upon thirty days written notice since it did not specifically mention termination of the contracts, but only referred to intent to resign.

(2) Since Standard obtained an agent's license for Sturdevant until 1971, the agency-manager contract could not have been terminated before 1971 when the license was not renewed.

(3) The evidence was not sufficient to show the contracts were terminated by mutual consent.

Concerning the first argument it is true that Burger's letter does not explicitly refer to "termination of the contracts", but its meaning is clear and unambiguous, and constitutes adequate notice under the contracts. Clearly, Sturdevant understood its meaning enough to remove himself from Standard's offices and to open up another insurance business as an agent for other companies.

In his second argument, Sturdevant misconstrues the application of Title 40, Chapter 33, R.C.M. 1947, concerning the licensing of insurance agents. This chapter provides, for purposes here, that an insurance license cannot be issued unless the recipient is appointed an agent by an authorized insurer. Since Standard somehow licensed Sturdevant until 1971, Sturdevant

- 4 -

argues his agency-manager contracts with Standard could not be terminated before 1971. But this licensing requirement is primarily for the protection of the public and is not meant to create private rights between the agent and insurance company as contended in this case. 16 Appleman Insurance Law and Practice, §8632.

While innocent third parties would be protected against any attempt by Standard or Sturdevant to repudiate its agency relationship between 1969 and 1971, this does not by itself entitle Sturdevant to assert a contractual right of agency-manager with Standard between the years 1969 and 1971. It is certainly a factor to be considered, but only in light of all the circumstances, and here there was evidence that Standard renewed the license because of a clerical oversight.

Sturdevant is clearly wrong in his last argument that the evidence was not sufficient to establish a mutual rescission. Termination of a contract by mutual consent is a question of fact for the district court. Cruse v. Clawson, 137 Mont. 439, 352 P.2d 989. In West River Equipment Co. v. Holzworth, 134 Mont. 582, 587, 335 P.2d 298, we held that a written contract may be cancelled by mutual consent and the cancellation may be oral. The Court stated:

> "However, mutual cancellation must be clearly
> expressed and shown, and acts and conduct of
> the parties to be sufficient must be clear,
> convincing and inconsistent with the existence
> of the contract. [Citing cases]."

In support of his contention there was no mutual agreement to terminate the contracts, Sturdevant relies on evidence that he did not submit a written resignation; his license was renewed until 1971; he ignored Burger's letter; he took only

pictures from the office; he continued to keep the insurance in force and service policies; and, he told his agents he did not resign. While this evidence clearly put the issue in dispute, there was substantial evidence to the contrary sufficient to support the district court's determination the contracts terminated on September 15, 1969. The district court was justified in concluding that Sturdevant's departure from Standard's office also resulted in his departure from the agency-manager contract he had with Standard.

We note that determination of the amount of money due was deferred until after trial and appeal, apparently pursuant to Rule 42(b), M.R.Civ.P. Multiple trials and appeals arising from a single dispute may create a severe burden in terms of increased cost to the litigants, delay in resolution of the controversy, and court congestion. Where there is no danger of prejudice and the issues are not complex the necessity of separate trials should be carefully weighed by the district court to ensure the rule is not abused.

We affirm the judgment and remand this cause for further proceedings consistent with this opinion.

_Daniel J. Shea_
Justice.

We Concur:

_Chief Justice_

_Justices._

- 6 -