No. 85-16

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

THE STATE OF MONTANA, ex rel.,
DONNA S. FITZGERALD, individually
and as Administratrix of the
Estate of Ronald E. Fitzgerald,

Relator,

-vs-

DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT, IN AND FOR
THE COUNTY OF CASCADE, HON. PETER
L. RAPKOCH & AETNA INSURANCE CO.,

Respondents.

ORIGINAL PROCEEDINGS:

COUNSEL OF RECORD:

For Relator:

Marra, Wenz, Johnson & Hopkins, P.C.; Joseph R.
Marra argued, Great Falls, Montana
John F. Iwen, Great Falls, Montana
Dola N. Wilson, Jr., Great Falls, Montana

For Respondents:

James, Gray & McCafferty; Robert J. James argued,
Great Falls, Montana

Submitted: May 15, 1985

Decided: July 23, 1985

Filed: JUL 23 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We accept jurisdiction as petitioned for by Donna S. Fitzgerald the relator, by way of supervisory control to the extent outlined in this opinion. A copy of this opinion, when served upon the District Court of the Eighth Judicial District, Cascade County, the Honorable Peter L. Rapkoch, judge presiding, shall be, constitute and serve the office of a writ of supervisory control over the District Court in cause no. 79977C pending in said District Court, entitled Donna S. Fitzgerald, individually and as the administratrix of the Estate of Ronald E. Fitzgerald, Deceased, Plaintiff vs. Aetna Insurance Company, defendant.

Further proceedings in said District Court cause shall be in accordance with this opinion.

Relator, Donna S. Fitzgerald (Fitzgerald) filed a petition in this Court for a writ of supervisory control on January 10, 1985. We deferred taking jurisdiction until response was obtained from the respondents, and oral argument had on May 15, 1985. We will set forth here a general statement of the facts in the underlying action, and later add such facts as may be necessary for a full discussion of the issues presented and determined by us.

On November 23, 1973, Ronald E. Fitzgerald was killed when the tractor-trailer rig he was driving collided with another tractor-trailer driven by Rudolph Collicott, who was employed by Turner Valley Transport Company (TVT), a Canadian corporation. The collision occurred outside of Lewistown, Montana, in Fergus County. On December 6, 1973, Rudolph Collicott pleaded guilty to drunk driving and manslaughter.

He was sentenced to a term of five years in the Montana State Penitentiary. The widow, Donna S. Fitzgerald, individually and as administratrix of the Estate of Ronald E. Fitzgerald filed suit in state court naming Collicott, TVT, and Emanual St. Louis as defendants. St. Louis owned the tractor that Collicott was using while hauling pipe for TVT at the time of the collision. The defendants, Canadians all, removed the case to Federal District Court in Great Falls, Montana, on the basis of diversity of citizenship. After extensive pretrial discovery, a bench trial was held in Federal District Court. On April 17, 1975, the Federal District Court rendered a judgment in favor of Fitzgerald and against Collicott and TVT for $190,739.00. This amount was within the coverage of the Aetna policy. No judgment against St. Louis was entered; the Court denied TVT's cross-claim for indemnification. Fitzgerald's judgment was not paid by Aetna nor by the two Canadian insurers who had issued policies to TVT.

This state court action was filed by Donna Fitzgerald on July 30, 1975 to force Aetna and the two Canadian insurance companies, Markel Insurance Company and Canadian Surety Company, to pay the judgment of $190,739.00 obtained by Fitzgerald against their insured, TVT. Fitzgerald contended that Aetna was liable to pay the judgment under a policy of insurance issued to TVT by Aetna. Her complaint also alleged that Aetna acted in bad faith by refusing to pay the judgment against its insured, by causing Fitzgerald unnecessary time and expense in prosecuting the underlying action against TVT, by acting in bad faith in offering ridiculously low settlements before and after the judgment against TVT, and by maliciously, oppressively and fraudulently depriving

- 3 -

plaintiff of the proceeds of her judgment, causing her extreme emotional distress.

Aetna twice attempted to remove the state court suit to federal court but was unsuccessful. Aetna's first removal petition was remanded to state court because all of the defendants in the action did not join the petition for removal. Thereafter, on July 12, 1976, both Canadian insurance companies were dismissed from the state court action for lack of personal jurisdiction. Service against both companies was quashed.

After the dismissal of the Canadian insurance companies, Aetna filed another petition to remove the case to federal court. The Federal District Court again remanded the case to the state court holding the case was always removable but Aetna had failed to state in the first removal petition that the Canadian companies were not parties. During the oral hearing on the motion to remand the second removal, United States District Judge Russell Smith remarked:

"I think it's a shameful business when a plaintiff gets in a position where she has to straighten out defendants who wrote policies and who ought to be able to get together and interpret them themselves. Of course it's just this sort of thing that makes insurance companies the unpopular creatures that they are in the court."

Fitzgerald seeks to have admitted in the present state court action the quoted statement by Judge Smith when this case is eventually tried.

Meanwhile, in the state court action, Aetna filed various motions to dismiss the case. Judge Paul Hatfield, then a state court judge, briefly presided over the matter until he was disqualified by Aetna. On January 21, 1976, before the Canadian companies were dismissed from the lawsuit, Judge Hatfield issued an order that in substance was

- 4 -

directed at the Canadian companies' motion to dismiss for lack of jurisdiction. In that order, he stated:

"[I]t appears to be another occasion for the justified criticism of the courts and lawyers who appear to lose sight of their true function, the administration of justice, while they joust with technicalities without substance resulting in delays, which is ultimately detrimental and expensive for all parties."

Fitzgerald seeks to introduce this statement at the upcoming trial.

Judge R. J. Nelson accepted jurisdiction after Judge Hatfield was disqualified by Aetna. On July 12, 1976, Judge Nelson issued an order dismissing the Canadian insurance companies from the case and denying Aetna's motion to strike counts II and III of plaintiff's complaint. (Count II essentially requests punitive damages and attorney fees on the grounds of fraudulent breach of contract, and count III seeks damages for mental and emotional distress for failure to pay the judgment.) Aetna was ordered to file an answer within 20 days. Fitzgerald commenced discovery and sought to inspect and copy certain correspondence between Aetna, its attorneys, agents, and employees relating to this lawsuit and also any written communication in Aetna's possession between the Canadian insurers, driver Collicott, and their attorneys and agents. Aetna refused to comply with the request. A hearing was held on December 13, 1976 on plaintiff's motion to produce.

Judge Truman Bradford issued an order directing Aetna to produce all documents except communications between Aetna and its counsel of record that pertained to this suit. In Judge Bradford's order and opinion, he wrote:

"This Court is also cognizant by taking judicial notice of its records and files herein, that suit was commenced by this Plaintiff on December 3,

- 5 -

1973, that it was removed to the Federal Court which rendered this judgment May 29, 1975; that this lawsuit was filed July 30, 1975; and it was twice removed and remanded from the Federal Court; that the Defendants have disqualified one of the District Judges originally presiding in this matter, and that the matter has continued to the point where the maxim, 'Justice delayed is justice denied' is particularly applicable herein."

Fitzgerald seeks to have this quotation admitted into evidence at the upcoming trial.

On February 8, 1977, Aetna moved in state court for summary judgment pursuant to Rule 56, M.R.Civ.P., contending that under the facts stipulated in this case it was not liable to pay the May 29, 1975 judgment entered against Collicott and TVT in federal court, and that plaintiff's claim alleging bad faith and intentional infliction of emotional distress should be dismissed as a matter of law. Fitzgerald filed a cross-motion for partial summary judgment seeking to find Aetna liable for the aforementioned judgment and compelling Aetna to pay. On April 19, 1977, after a hearing, Judge William Coder, who was then presiding over the case, denied Aetna's motion and granted plaintiff's motion for partial summary judgment. Aetna obtained a stay of execution and appealed to the Montana Supreme Court. In Fitzgerald v. Aetna Insurance Co. (1978), 176 Mont. 186, 577 P.2d 370, this Court affirmed the order of the District Court. This Court, however, declined to address Aetna's motion to strike counts II and III on the grounds that the denial of the motion by the District Court was not an appealable order under Rule 1, M.R.App.Civ.P. See 176 Mont. at 195, 577 P.2d at 375.

On April 28, 1978, Aetna paid Fitzgerald the total amount of the judgment obtained in 1975 against Rudolph Collicott and TVT.

On June 15, 1978, Judge Coder assessed $1,115.50 for attorney fees against Aetna because plaintiff was required to respond to Aetna's repeated motions to strike that raised no new grounds other than those contained in the earlier motions. The award was made pursuant to Rule 11, M.R.Civ.P. and the equitable power of the court. Aetna has not paid this assessment to date.

Plaintiff served a set of interrogatories on Aetna on June 20, 1978, and Aetna answered these on July 19, 1978. On May 6, 1980, plaintiff filed a notice of readiness for trial. No more documents were filed in this case until July 19, 1983, when plaintiff filed a motion for a preliminary pretrial conference. A conference date was set and vacated.

Judge Coder retired from the bench and Judge Thomas McKittrick accepted jurisdiction over the case. Fitzgerald moved to disqualify Judge McKittrick and on January 5, 1984; Judge John McCarvel accepted jurisdiction. Aetna moved to disqualify Judge McCarvel. Judge R. D. McPhillips accepted jurisdiction. Fitzgerald moved to disqualify Judge McPhillips. On March 23, 1984, Judge Peter Rapkoch accepted jurisdiction and is still presiding.

I

## SUPERVISORY CONTROL

Several issues are raised for consideration here. The first issue to be addressed is whether a writ of supervisory control should issue in this case.

Aetna points to the decision against it in Fitzgerald v. Aetna Insurance Co., supra, where we denied its petition for writ of supervisory control on the ground that the denial of the motions to strike was not an appealable order. Aetna contends that the rulings of the District Court here involved

- 7 -

are not appealable orders. Fitzgerald on the other hand contends that she has been engaged in this litigation for more than ten years, and has no plain, speedy or adequate remedy in the ordinary course of law for redress under the rulings hereafter to be discussed. Fitzgerald contends that a writ of supervisory control will serve to save judicial time, provide judicial economy, and prevent eggregious error by the District Court from prolonging her already protracted litigation.

Early in this century, this Court decided that one of the functions of the supervisory power of the Court is to control the course of litigation in those courts subject to its control, where those courts are proceeding within their jurisdiction but under mistake of law are doing a gross injustice, and there is no appeal or the remedy by appeal is inadequate. State ex rel. Shores v. District Court (1903), 27 Mont. 349, 71 P. 159; State ex rel. Whiteside v. District Court (1900), 24 Mont. 539, 63 P. 395. We have refused to issue a writ of supervisory control when it appeared that any injustice to the party could be corrected by an appeal from the final judgment. State ex rel. Barron v. District Court (1946), 119 Mont. 344, 174 P.2d 809.

There are no written regulations or laws respecting our power of supervisory control, and this Court has followed the practice of proceeding on a case-by-case basis although we have been careful not to substitute the power of supervisory control for an appeal provided by statute. State ex rel. Reid v. District Court (1953), 126 Mont. 489, 255 P.2d 693. We have said, however, that if it is apparent from the record that a relator will be deprived of a fundamental right, both justice and judicial economy require the Supreme Court to

resolve the issue in favor of the relator and assume jurisdiction, State ex rel. Coburn v. Bennett (Mont. 1982), 655 P.2d 502, 39 St.Rep. 2300. If the cause in district court is mired in procedural entanglements and appeal is not an adequate remedy, we will issue a writ of supervisory control. State ex rel. Levitt v. District Court (1977), 172 Mont. 12, 560 P.2d 517.

We find from the record here that there are procedural entanglements here caused by rulings made in the District Court that may prolong the litigation and have great potential to make an appeal an inadequate remedy. There is a possibility sufficient for us to exercise supervisory control that fundamental rights of Fitzgerald are in jeopardy. Accordingly, we assume jurisdiction by way of supervisory control.

II

### THE ISSUE OF SEPARATE TRIALS ON PUNITIVE DAMAGES

One of the principal grounds on which we base our order for supervisory control is the ruling of the District Court relating to the trial of the issue of punitive damages.

Aetna moved for an order in limine (par. 7 of the motion):

> "A. Prohibiting the plaintiff, any witness or counsel from any way discussing or presenting to the jury any information concerning the assets, income, profits or other indicia of the economic and financial condition of the defendant, or refer to any amount claimed for punitive damages during voir dire, opening statements, or the examination of witnesses, until the plaintiff has presented sufficient evidence upon which, in the court's opinion, the question of punitive damages may properly go to the jury."

The District Court ruled on that portion of the motion in limine as follows:

- 9 -

"(A) Above is <u>denied</u>, except that, considering substance over form, the court deems this motion in limine to be a motion for a separate trial under Rule 42(b), of the Montana Rules of Civil Procedure, as to the amount of exemplary damages to be awarded the plaintiff, <u>if</u>, <u>and only if</u>, the plaintiff has obtained a verdict of the jury in this case that the defendant has acted in bad faith, which motion is granted."

Left unclear from the District Court's order is whether the punitive damages issue will be tried by one jury, sitting seriatim, or to two different juries. Perfectly clear, however, is that there will be two verdicts on the punitive damages issue, assuming that the first verdict results in a finding of bad faith, because the court acted sua sponte in separating the liability from the punitive damages issues for submission to the jury.

One of two conditions must exist for the exercise by a district court of its power to separate issues for trial. It must either be in furtherance of convenience, or to avoid prejudice. Rule 42(b), M.R.Civ.P., provides:

"Rule 42(b). <u>Separate trials</u>. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or <u>of any separate issue</u> or of any number of claims, cross-claims, counterclaims, third-party claims or issues." (Emphasis added.)

We call to the attention of practitioners that Rule 42(b), M.R.Civ.P., relating to separate trials, is different in wording from Rule 42(b), of the Federal Rules of Civil Procedure on the same subject. The federal rule provides additional grounds for granting separate trial, as when separate trials will be conducive to expedition and economy but "always preserving inviolate the right of trial by jury." Even though the federal provision of inviolate right of trial by jury is missing from its Montana counterpart, Rule 42(b), there should be no difference in result under the Montana

- 10 -

rule when an order for separate trial is considered.  Art. II, § 26, 1972 Montana Constitution provides that "the right of trial by jury is secured to all and shall remain inviolate."

We begin consideration of the issue by conceding that Rule 42(b), M.R.Civ.P., provides a broad discretion to the district court in the handling of trial procedures.  In State ex rel. McGinnis v. District Court (Mont. 1983), 673 P.2d 1207, 40 St.Rep. 1858, where the District Court had bifurcated a contest between claimants of an estate, we denied supervisory control.  In that case, the petitioners claimed to be entitled to the estate of a decedent by reason of an agreement that if they provided for her during her lifetime, she would leave the bulk of her estate to them. The decedent died intestate, and the intestate heirs contended that they were entitled to distribution of the decedent's estate.  The District Court bifurcated the issue, providing that the non-heirs would first present their claims and if they presented a prima facie case, then the intestate heirs would be cited to appear and defend against the non-heirs at their separate expense.  We decided to deny the writ because of the broad discretion given to the District Court in handling trial procedures.

In Monaco v. Cecconi (1979), 180 Mont. 111, 589 P.2d 156, we held that the District Court did not abuse its discretion in providing a separate trial on a specific issue. That case involved a suit to set aside a decedent's deed of real property to Cecconi, which suit was consolidated with a contest over Cecconi's petition to have decedent's will admitted to probate.  The trial court limited the trial issues to the validity of the earlier will, because even if

- 11 -

the deed were tainted by undue influence, the net result of a valid will would have been the return of the real property to the estate and the same property would still have gone to the defendant by right of devise. In other words, determination of one issue would dispose of another issue.

On the other hand, in Standard Insurance Company v. Sturvandt (1977), 173 Mont. 23, 566 P.2d 52, this Court said:

> "We note that determination of the amount of money due was deferred until after trial on appeal, apparently pursuant to Rule 42(b), M.R.Civ.P. Multiple trials and appeals arising from a single dispute may create a severe burden in terms of increased costs to litigants, delay in resolution of the controversy, and court congestion. Where there is no danger of prejudice and the issues are not complex, the necessity of separate trials should be carefully waived by the District Court to ensure that the rule is not abused." 173 Mont. at 28; 566 P.2d at 55.

The case most closely in point appears to be United Airlines, Inc. v. Weiner (9th Cir. 1961), 286 F.2d 302. In that case, there was a mid-air collision in 1958 in Nevada between an airplane owned and operated by the USA and a passenger airplane operated by United Airlines. Twenty-three actions for wrongful death against United Airlines and the United States were filed in the Federal District Court in California. When the 23 cases were at issue, a motion was made that all cases be consolidated on the issue of liability only. The Federal District Court ordered that all of the cases be consolidated on the issue of liability and that thereafter the question of damages as to the plaintiffs in each of the cases would be tried separately, by separate juries, where demanded. The ruling of the Federal District Court for separation of issues was appealed to the Court of Appeals of the Ninth Circuit under 28 U.S.C. 1292(b). With

respect to the exemplary damages that were prayed for in some (not all of the cases) the Court of Appeals said:

> "It is apparent that where parties are asking for exemplary damages which depend on the degree of culpability of the defendant, they are required to establish by their evidence their contentions as to the degree of negligence. Likewise, the defendant is entitled to show all of the facts surrounding the collision in order to establish, if he can, first that there was no negligence, and second, that even if there was negligence, there was no willfulness or wantonness or extreme recklessness.

> "We do not say that in no circumstances can a separate jury determine the issue of damages after another jury has determined the issue of liability for we do not reach that question in this case. As was said in a recent case in the Seventh Circuit 'whether a party is deprived of a jury trial as contemplated by the Seventh Amendment when some of the issues are submitted to one jury, and the other issues to a second jury, is a more difficult question to resolve.' (Citing authority.) We do hold that under the circumstances presented by this appeal the issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issue may be had without injustice. The question of damages is so interwoven with liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial. (Citing authority.)" 286 F.2d at 306.

It is clear to us that the issue of exemplary damages in any case is so interwoven with the proof first of negligence and secondly of willfulness, wantonness, malice or oppression, that their separation under Rule 42(b), M.R.Civ.P., for decision by a single jury seriatim or by different juries is an abuse of discretion by the District Court, which would result in extended and needless litigation. We reverse the District Court on this point.

Though not applicable to this case, it is well to point out the adoption by the legislature of H.B. 363, and its signature by the governor, making it effective as of April 19, 1985. Section 2 of that Act amends § 27-1-221, MCA, to provide in a subdivision thereof:

"The plaintiff may not present, with respect to the issue of exemplary and punitive damages, any evidence to the jury regarding the defendant's financial affairs or net worth unless the judge first rules, outside the presence of the jury, that the plaintiff has presented a prima facie case for exemplary or punitive damages."

The District Court order in this case goes beyond what the legislature has provided to take effect in the future on punitive damages claims. Under the new statute, in the course of the trial, the district judge will determine out of the jury's hearing whether a prima facie case exists for punitive damages. The District Court in the case at bar has directed that there must first be a _jury_ _verdict_ that there is liability and another verdict for punitive damages.

For the guidance of the court in this case, we hold that evidence of the net worth or financial affairs of Aetna would become admissible when the plaintiff has established a prima facie case for punitive damages.

"Prima facie case" means the production by the plaintiff of such evidence which, although not compelling a verdict on the issue for the party whose contention it supports, is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when the trier of fact finds the prima facie case is not rebutted by other evidence. State ex rel. Department of Public Health v. Hogg (Mo. App. 1971), 466 S.W.2d 167, 170; State ex rel. Department of Public Health v. Ruble (Mo. 1970), 461 S.W.2d 909, 912, 913. A refusal by the district court of evidence of net worth or financial affairs would mean that the district court had determined that reasonable minds could not differ that a prima facie case was not made out by the plaintiff, much the same test as for a directed verdict.

Weber v. Blue Cross (Mont. 1982), 643 P.2d 198, 203, 39 St.Rep. 245.

## III

MAY THE PLAINTIFF'S COUNSEL OR HER WITNESSES

DURING TRIAL REFER TO ANY LEGAL DUTY OF AETNA?

Aetna moved for an order in limine as follows:

"B. Prohibiting plaintiff, any witness or counsel from referring to or indicating to the jury that at any time that defendant [Aetna] owed a duty other than one not to intentionally inflict emotional distress."

Ruling on this portion of the motion in limine, the District Court went a step further, and ruled:

"B. Above is granted, with the additional ruling that neither party is to refer to a duty of the defendant Aetna, of whatever scope or nature, until the closing arguments, after jury instructions have been settled and read to the jury, and then only in conformity therewith. This matter of the defendant's duty is a legal question."

On this issue, Aetna argues that Fitzgerald, since she is not an insured of Aetna, and has not recovered a judgment in excess of the policy limits, nor obtained an assignment by Aetna's insured, and because the complaint has not alleged a violation of the Trade Practices Act, is not owed a duty under the policy. Aetna argues that it would be prejudicial to Aetna to allow plaintiff or her attorneys or witnesses to imply that Aetna owed a duty toward her or violated laws in the State of Montana prior to the Court's ruling on those duties or violations.

Fitzgerald responds that if this order of the District Court is allowed to stand, she has no lawsuit to try. She contends that the case involves first the duty that Aetna owed Donna Fitzgerald during the course of the wrongful death action and whether Aetna violated that duty, and then the

- 15 -

duty owed Donna Fitzgerald after the judgment was obtained and whether Aetna violated that duty.

Counsel for Fitzgerald agree that it would be improper for counsel to argue either the facts or the law to a jury during voir dire examination and that neither the trial court nor counsel should presume that this would be done. Fitzgerald contends, however, that she has a right to state to the jury on her opening statement what she intends to prove in the action and that Aetna violated duties imposed upon it by the laws of the State of Montana and the laws of the United States.

Section 25-7-301, MCA, sets forth the order of trial. It provides with respect to the opening statements:

"(1)   The party who has the burden of proof may briefly state his case and the evidence by which he expects to sustain it.

"(2)   The adverse party may then, or at the opening of his case, briefly state his defense and the evidence he expects to offer in support of it . . ."

Under § 25-7-102, MCA, all questions of law, including the admissibility of testimony, the facts preliminary to such admission, the construction of statutes and other writings, and other rules of evidence are to be decided by the court. All discussions of law are to be addressed to the court.

Our research reveals no case directly in point from this Court. We have held with respect to opening statements which included inadmissible evidence in criminal cases that overbroad statements of expected evidence by prosecutors will cause reversal. State v. West (Mont. 1980), 617 P.2d 1298, 37 St.Rep. 1772 (reversed); State v. Zachmeier (1968), 151 Mont. 256, 441 P.2d 737 (reversed); State v. Ruana (1972), 159 Mont. 507, 499 P.2d 797 (affirming conviction); State v.

Kolstad (1975), 166 Mont. 185, 531 P.2d 1346 (affirming conviction).

In reality, Aetna's motion under this subject has the effect of repeating Aetna's earlier attempts to strike from Fitzgerald's complaint counts II and III, except as to the claimed intentional infliction of emotional distress. Aetna contends that Fitzgerald is not a third party beneficiary under the policy with TVT, and its only duty to Fitzgerald was not intentionally to inflict emotional distress upon her.

Fitzgerald's claim against Aetna is two-faceted, depending upon whether her case is viewed before or after the judgment was obtained by her against TVT.

After Fitzgerald recovered judgment against TVT, under Aetna's policy issued to TVT, Fitzgerald acquired a contractual right to a cause of action against Aetna for the amount of the judgment within policy limits. Aetna's policy provided, under "conditions" in paragraph 4, entitled "action against the insurer," the following provision:

"4. No action shall lie against the Insurer unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this policy nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement by the insured, the claimant and the insurer.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under the policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the insurer as a codefendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or the insured's estate shall not relieve the insurer of any of his obligations hereunder."

- 17 -

Once judgment had been entered against Collicott and TVT, Fitzgerald was more than simply a judgment creditor of the insured; she had a contractual right under Aetna's policy to sue the company directly. She did not need an assignment of rights from the insured, although she may have obtained one. The contractual right of a third party claimant to sue the insurer directly after judgment must include the right to receive payment of the determined third party claim after judgment. After judgment against the insured, the claimant against the insured is in the same position as an insured with respect to the insurance company. The contractual duties that exist then are protected by the same concepts of good faith and fair dealing that pertain to contracts between insurers and insureds.

With respect to testimony in this cause, it may be necessary, if either party employs expert witnesses, for such experts to refer to fiduciary or other duties of the insurer in stating their opinions as to whether there was here an improper failure to settle the claim. See Gibson v. Western Fire Insurance (Mont. 1984), 682 P.2d 725, 41 St.Rep. 1048.

We find that the order of the District Court on this issue is overbroad. We hold that under § 25-7-301, MCA, either counsel may briefly state his or her case and the evidence he or she expects to introduce to support the same, and to refer in opening statements to evidence to be adduced, if those statements are made in good faith and with reasonable ground to believe the evidence is admissible. See 75 Am.Jur.2d 291 Trial, § 208. Statements of counsel with respect to the net worth of Aetna or its financial affairs are subject to the discussion following hereafter relating to the prayer of the complaint.

There remains in the District Court sufficient power to correct or prevent abuses. Its power to grant mistrial, to admit or deny improperly offered evidence or improper testimony and to admonish the jury to ignore or disregard improper statements or testimony will preserve the rights of the parties to a fair trial.

IV

### DID THE DISTRICT COURT ABUSE ITS DISCRETION

### IN DENYING THE MOTIONS TO AMEND THE PRAYER

On November 29, 1984, at the pretrial conference, Fitzgerald moved to amend her punitive damage prayer from $1 million to a "sum proportionate to the net worth of the insurance company found obligated to pay the plaintiff." This amendment was denied by the District Court.

Fitzgerald further moved to amend her compensatory damage prayer from $100,000 to "whatever sum the jury finds due." This motion was denied by the court.

Fitzgerald also moved to amend count III of her prayer for compensatory damages to read: "For whatever sums the jury finds due and proper for grave, mental and emotional distress, and for whatever other relief may be just." This motion was denied by the court.

Aetna contends that such motions are addressed to the discretion of the district court; that under Kraus v. Newman (1960), 137 Mont. 388, 352 P.2d 261, there must be shown an abuse of discretion which prejudices the other party; and Aetna relies upon Cullen v. Western, etc. Title Company (1914), 47 Mont. 513, 134 P. 302, to the effect that after issues are joined, the matter of amendment lies within the discretion of the district court, particularly where it is possible that if the amendment is allowed, further pleadings

and additional delay may be required. Aetna claims that allowance of the amendments would require the defendant to call a witness from Aetna to explain its financial statements and balance sheets. Aetna further argues that the motion was made on a Thursday afternoon preceding a Monday morning trial date.

Fitzgerald responds that Rule 14, M.R.Civ.P. provides for liberality in allowing amendments; that in Lien v. Murphy Corp. (Mont. 1982), 656 P.2d 804, 39 St.Rep. 2252, the Court held that a complaint filed in 1971 could be amended by the plaintiff in 1980 to increase damages; that theories of a case can be added to by amendments, Kearns v. McIntyre Construction Company (1977), 173 Mont. 239, 567 P.2d 433; and that amendments should be freely allowed when the defendants are not misled to their prejudice, Haugen v. Warner (Mont. 1983), 665 P.2d 1132, 40 St.Rep. 1036.

Rule 9(g), M.R.Civ.P. requires that items of special damages be specifically stated. Punitive damages do not fall into the category of special damages. There is no other provision in the Rules of Civil Procedure that punitive damages must be demanded in a specific sum.

Sections 25-4-311, -312, -313, MCA, provide that in actions for personal injury and wrongful death the amount of damages may not be stated in a claim for relief unless the defendant requests it. The claimant must give written notice of the amount of special and general damages sought before a default may be taken, or at least 45 days prior to the date set for trial, under the statutes.

It is usually held that the prayer for damages is not part of the claim or counterclaim. Under code pleading, the prayer was independent of the statement of facts in the

complaint, and if the complaint entitled plaintiff to any relief, demurrer could not stand against it no matter what the form of the prayer or whether there was any prayer at all. Donovan v. McDevitt (1907), 36 Mont. 61, 92 P. 49. Under Rule 54(c), M.R.Civ.P., every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled "even if the party has not demanded such relief in his pleadings."

We hold that under Rule 14, M.R.Civ.P., regarding amendments to pleadings, that Fitzgerald should be allowed in this case to amend the prayer in her complaint. We further hold that because of the provisions of §§ 25-4-311, -312, and -313, MCA, defendant is entitled to have such amendments to the prayer include the dollar amount of special and general damages sought, including punitive damages in such prayers, or in lieu, a statement of damages under § 25-4-312. We further hold that in any amendment, the dollar amount sought may not be open-ended, by reference to a proportion of the financial condition or net worth of the defendant. In any event, the amendment in addition to the dollar amounts stated to the prayer may include such language as "such other and further relief to which the plaintiff may be entitled."

V

ARE THE STATEMENTS OF JUDGES IN MAKING RULINGS

IN RELATED CASES ADMISSIBLE IN THE TRIAL OF THIS CASE?

Aetna moved for an order in limine:

"Prohibiting the plaintiff, any witness or counsel, from referring to any court order or statements made by judges in the underlying 'death' [action] in voir dire, opening statements or examination of witnesses until such time as the court has ruled that such orders or statements are admissible."

- 21 -

The District Court granted the motion.

Aetna particularly objects to admission of the statements made by United States District Judge Russell Smith, State District Judge Paul Hatfield and State District Judge Truman Bradford, which are set forth earlier in this opinion. Those statements were made in connection with other cases that related to the cause at issue here.

It is Aetna's contention that since the judges may not, without violation of judicial ethics, appear as witnesses in the case, the statements attributed to them are inadmissible and reference to such statements would be improper.

We note that the order in limine which was granted by the District Court excludes references to the judicial statements in the voir dire of the prospective jurors, opening statements, or examination of witnesses, until the court has ruled that the statements are admissible. Probably nothing prevents the plaintiff Fitzgerald from applying to the Court for a pretrial determination of the admissibility of such statements. It would be improper for this Court to exercise supervisory control in advance of any rulings made by the District Court on this subject, and in any event, such rulings may properly be reviewed on appeal.

CONCLUSION

Supervisory control is granted in part and denied in part. Let remittitur issue forthwith. Costs to relator.

_____
                Justice

We Concur:

- 22 -

_____
Chief Justice

_____

_____

_____

_____

_____
Justices