No. 89-388

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

FRANCIS M. TINDALL,

        Plaintiff and Appellant,

  -vs-

KONITZ CONTRACTING, INC.,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dennis McCafferty; James, Gray & McCafferty, Great
Falls, Montana

    For Respondent:

        William Berger; Wilkins & Berger, Lewistown, Montana

---

Submitted on Briefs:  Oct. 20, 1989

Decided:  December 20, 1989

Filed:

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Plaintiff, Francis M. Tindall, filed a complaint against defendant, Konitz Contracting, Inc., on September 6, 1984, alleging that defendant breached a personal service contract that the two parties entered into on November 16, 1981. Defendant filed a counterclaim on October 28, 1985, alleging that plaintiff intentionally and maliciously interfered with a business relationship between defendant and a third-party and that plaintiff intentionally and maliciously sent a libelous letter to a third-party that caused defendant injury. The District Court of the Tenth Judicial District, Fergus County, found that the personal service contract was void for lack of consideration; that plaintiff tortiously interfered with a business relationship; and that plaintiff maliciously committed libel. The court then imposed on Tindall $7,500 in compensatory damages and $8,500 in punitive damages. Plaintiff appeals. We affirm.

The issues raised on appeal are:

1. Whether the District Court erred in concluding that no consideration existed for the personal service contract;

2. whether the District Court erred in concluding that plaintiff relied upon "forbearance to sue" as consideration for the personal service contract;

3. whether the District Court erred in finding that defendant agreed to the personal service contract under duress;

4. whether the District Court erred in determining that the counterclaim should not be tried separately;

5. whether the District Court erred in concluding that plaintiff intentionally interfered with a business relationship between defendant and a third-party;

2

6. whether the District Court erred in concluding that the November 19 letter from plaintiff was libelous per se;

7. whether the District Court erred in assessing plaintiff with $8,500 in punitive damages after concluding that plaintiff's actions were malicious; and

8. whether the District Court erred in refusing to hear testimony regarding excessive drinking by defendant at the time he signed the personal service contract.

Francis M. Tindall, plaintiff, operated a general contracting business centered in Lewistown, Montana, that primarily dealt with crushing gravel for secondary roadways and runways. In 1979, Tindall wanted to retire. During that same year, Tindall met Thomas Konitz, defendant, who at that time was employed by another general contracting firm. The two had several discussions regarding the sale of Tindall's business to Konitz. Konitz finally agreed to purchase Tindall's business and on August 1, 1979, Konitz and Tindall consummated the sale of the business through the signing of three documents. The documents were prepared by Tindall's attorney to provide tax benefits for Tindall. The three documents included a lease on the business real estate with an option to purchase; an equipment lease; and a buy/sell agreement regarding some other specifically listed equipment.

Both parties realized that the only way Konitz could successfully take over the business was through Tindall's initial support and active assistance, including Tindall's bonding capacity. During the next few months, Konitz bid on three jobs--OMAD 3, OMAD 4 and the Stanford Airport. Konitz, who had experience in bidding, expediting and supervising smaller jobs, prepared the bids. Tindall, however, signed the bid forms and furnished the bonds. Tindall was granted these jobs, but Konitz did the actual work and paid the bond premiums. The payments received on the jobs first went to

3

Tindall, who did not withhold any service charges for the use of his bonding capacity. In March, 1980, Tindall and Konitz, as a joint venture, bid on and were awarded the Griffin Creek job. Konitz again prepared the bids and accomplished the actual work. Konitz subsequently bid and bonded in his own name, and without assistance by Tindall, the work on the Magpie road.

During the spring of 1981, Tindall began presenting Konitz with a personal service contract. The contract provided that Konitz would pay Tindall for his services at a rate of four percent of the gross contract price for assistance in the bidding, preparation and other administrative services necessary to complete the contract and another three and half percent whenever Tindall acted as a guarantor or surety on the contract. In addition, the contract provided that payments would begin sixty-one months from the execution of the contract at a rate of one thousand dollars per month. Konitz initially refused to sign the personal service contract. Tindall, however, was relentless in pressuring Konitz to sign the contract. Tindall threatened Konitz that if he did not sign the contract, he would put Konitz out of business by going to Konitz's suppliers, bankers and bonding companies and by repossessing Konitz's equipment. In light of Konitz's deteriorating financial situation, Konitz could not have successfully fought an economic or legal battle with Tindall and remain in a viable business position. Konitz therefore signed the personal service contract on November 19, 1981 in Tindall's attorney's office. The personal service contract that Tindall prepared and that Konitz signed stated that Tindall helped bid and bond five jobs and therefore Tindall was entitled to $138,629.80, with payments of one thousand dollars a month beginning August 1, 1984.

4

Konitz's financial position substantially improved from 1981 to the fall of 1984. In the summer of 1984, Konitz made the last payment to Tindall under the 1979 contracts. At that time, Konitz decided not to exercise the option to purchase the real estate and also not to make the August 1, 1984 payment under the personal service contract. Tindall became very angry and attempted to carry out threats previously made against Konitz in 1981 and the earlier part of 1984.

On September 6, 1984, Tindall filed a complaint with the District Court of the Tenth Judicial District, alleging that Konitz breached the personal service contract. Konitz subsequently filed a counterclaim, alleging that Tindall intentionally and maliciously interfered with a business relationship between Konitz and a third-party and that plaintiff maliciously sent a libelous letter to a third-party that caused Konitz injury. Tindall then filed a motion with the District Court under Rule 42(b), M.R.Civ.P. to hear Konitz's counterclaim separately from the original complaint. The District Court denied the motion. A nonjury trial was held on February 9 and 10, 1988. The court issued its Findings of Fact and Conclusions of Law on October 17, 1988, finding that the personal service contract was void for lack of consideration; that Tindall tortiously interfered with a business relationship; and that Tindall maliciously committed libel. The District Court also concluded that Tindall should be subjected to punitive damages. After a hearing was held, the court imposed on Tindall punitive damages in the amount of $8,500. Tindall appeals.

The first issue raised on appeal is whether the District Court erred in concluding that no consideration existed for the personal service contract.

Consideration is an essential element of a contract. Section 28-2-102(4), MCA; Boise Cascade Corp. v. First Sec. Bank of Anaconda (1979), 183 Mont. 378, 391, 600 P.2d 173, 181. In the present case, the District Court concluded that no consideration existed for the personal service contract. The findings of fact support this conclusion. The personal service contract that Konitz signed on November 16, 1981 stated that

> WHEREAS TINDALL sold his contracting business to Konitz and thereafter assisted KONITZ in the bidding and bonding of various construction projects without which Konitz would have been unable to operate.
>
> NOW, THEREFORE, KONITZ hereby agrees to pay TINDALL from the percentages agreed upon between the parties, for TINDALL'S assistance on said projects, the sum of $138,629.80. Provided further that said sum shall be paid in monthly installments of $1,000.00 per month commencing August 1, 1984, and continuing thereafter until paid in full.

The amount of $138,629.80 was derived from the total amount Konitz received from five jobs--OMAD 3, OMAD 4, the Stanford airport, Griffin Creek and the Magpie road. It is undisputed that Konitz initially required Tindall's bonding capacity. Tindall therefore assisted Konitz with bonding for the first four jobs. Most importantly, however, all of these jobs were bonded and executed prior to the signing of the personal service contract in November, 1981. By the time Konitz signed the personal service contract in 1981, he had already developed a bonding capacity for himself and no longer needed Tindall's assistance.

The general rule is that past consideration is not sufficient to support a promise. Soukop v. Snyder (Hawaii

App. 1985), 709 P.2d 109, 113; Sheehy v. Bodin (Minn. App. 1984), 349 N.W.2d 353, 354; Smith v. Recrion Corp. (Nev. 1975), 541 P.2d 663, 665; Hansen v. Kootenai County Bd of Comm'rs (Idaho 1970), 471 P.2d 42, 51. As the United States District Court stated in Citibank, Nat'l Ass'n v. London (S.D. Texas 1981), 526 F.Supp. 793,

> [a] promise supported by past consideration is unenforceable because the detriment did not induce the promise. That is, "since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise."

526 F.Supp. at 803 (quoting J. Calamari & J. Perilo, Contracts § 4-2, at 135 (2nd Ed. 1977)). Likewise, Tindall's consideration--bonding assistance--was tendered prior to the signing of the personal service contract. Tindall did not incur any new detriment upon the signing of the 1981 contract that would have induced Konitz to pay Tindall an additional $138,629.80. Konitz's promise to pay Tindall $138,629.80 is thus unenforceable because it was supported by past consideration.

The record also supports the District Court's finding that when Konitz bought Tindall's equipment, he paid $150,000.00 more than the estimated market value of the equipment. The District Court found that Konitz did not attempt to dicker on Tindall's figures because Konitz took into consideration the assistance Tindall was giving him in the business. Thus, Tindall was apparently already adequately compensated for his bonding capacity. In light of the above, the District Court did not err in concluding that no consideration existed for the 1981 personal service contract and was therefore void as a matter of law.

7

Tindall also argues that the District Court erred because it did not make a finding regarding one of Tindall's witness's testimony. The District Court does not need to address specifically each piece of Tindall's evidence. All that is required is that the District Court set forth adequate findings and conclusions so that this Court does not have to speculate as to the reasons for the District Court's decision. In re Marriage of Jones (1980), 190 Mont. 221, 224, 620 P.2d 850, 851-52. The District Court therefore did not err merely because it did not make a specific finding regarding one of Tindall's witness's testimony.

The second and third issues raised on appeal are whether the District Court erred in concluding that Tindall relied upon "forbearance to sue" as consideration for the personal service contract and whether the District Court erred in finding that Konitz agreed to the personal service contract under duress.

This Court does not need to address these issues because we have already affirmed above the District Court's conclusion that the personal service contract was void for lack of consideration.

The fourth issue raised on appeal is whether the District Court erred in determining that the counterclaim should not be tried separately.

Rule 42, M.R.Civ.P., governing whether a district court should consolidate or separate trials, provides a court with broad discretion in the handling of trial procedures. State ex rel., Fitzgerald v. Dist. Court of the Eighth Judicial Dist. (1985), 217 Mont. 106, 116, 703 P.2d 148, 155. This rule provides in pertinent part that

> [t]he court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of

8

> any separate issue or of any number of
> claims, cross-claims, counterclaims,
> third-party claims, or issues.

Rule 42(b), M.R.Civ.P. In the absence of prejudice to the parties, this Court recognizes the policy that "[m]ultiple trials and appeals arising from a single dispute may create a severe burden in terms of increased costs to litigants, delay in resolution of the controversy, and court congestion." Fitzgerald, 217 Mont. at 117, 703 P.2d at 155 (quoting Standard Insurance Co. v. Sturdevant (1977), 173 Mont. 23, 28, 566 P.2d 52, 55).

In the present case, Tindall argues that the court confused the facts associated with his complaint with the facts associated with Konitz's counterclaim. Tindall then argues that he was prejudiced because this "confusion" resulted in the court finding that the personal service contract was void because Konitz signed it under duress. We disagree. As already discussed above, the contract was void for lack of consideration. Tindall therefore was not prejudiced as a result of the court also finding that the contract was void because of Konitz signing it under duress. In addition, the facts surrounding the personal service contract and the facts surrounding the bases of Konitz's counterclaim are sufficiently intertwined. The District Court therefore did not err in denying Tindall's motion to separate trials.

The next issue raised on appeal is whether the District Court erred in concluding that Tindall intentionally interfered with a business relationship between Konitz and a third-party, Morgenstern.

In Conclusion of Law No. 4, the District Court concluded that Tindall unlawfully interfered with Konitz's

and Morgenstern's gravel contract. In particular, the court found that Konitz and Morgenstern had an agreement that Konitz would purchase from Morgenstern 3,000 tons of gravel. Although Tindall owned the gravel pit, Morgenstern leased the pit from Tindall and paid royalties to Tindall on the gravel he sold. Morgenstern primarily used the gravel for himself but also sold gravel to the public. The court found that Tindall interfered with Konitz's and Morgenstern's contract when he directed Morgenstern not to sell the gravel to Konitz. As a result, Morgenstern did not sell the gravel to Konitz and Konitz was forced to go elsewhere and pay $7,500 more.

The four elements required to establish the tort of interference with a contract are that the defendant's acts (1) were intentional; (2) were calculated to cause damage to the plaintiff in his or her business; (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) actually resulted in damage and loss to the plaintiff. Northwestern Nat'l Bank of Great Falls v. Weaver-Maxwell, Inc. (1986), 224 Mont. 33, 40-41, 729 P.2d 1258, 1262; Bolz v. Myers (1982), 200 Mont. 286, 295, 651 P.2d 606, 611.

In light of the District Court's findings of fact, all four of these elements were met in the present case. The court found that Tindall intentionally contacted Morgenstern so as to prevent Morgenstern from selling gravel that Konitz had already contracted to purchase. The court also found that Tindall was angry at Konitz for refusing to abide by the personal service contract and therefore engaged in a number of retaliatory actions, including interfering with the gravel contract between Morgenstern and Konitz. Tindall did not have the right to interfere with a third-party contract merely because he owned the gravel pit that Morgenstern was

10

leasing. If Tindall did not receive royalties as a result of Morgenstern's contract with Konitz, he would then have had the right to bring a complaint against Morgenstern. Furthermore, Tindall's suspicions or beliefs about Konitz also did not give Tindall the right to interfere with a contract between Konitz and Morgenstern. Obviously, Tindall's actions were intentionally calculated to cause damage to Konitz's business and were done without a justifiable cause. Konitz thus had to purchase gravel elsewhere to fulfill his obligations. Konitz had to pay $7,500 more than if he would have been allowed to purchase the gravel from Morgenstern. Konitz thus suffered actual damage in the amount of $7,500.

The record supports the District Court's findings and conclusions and we therefore hold that the court did not err in determining that Tindall tortiously interfered with a contract between Konitz and Morgenstern.

The sixth issue raised on appeal is whether the District Court erred in concluding that the November 19 letter from Tindall was libelous per se.

In its Conclusion of Law No. 5, the District Court concluded that the November 19, 1984 letter from Tindall was libelous and slanderous per se. The court also concluded that the letter, which was published to Morgenstern, was sent with the purpose of destroying a lawful business relationship between Konitz and Morgenstern. The letter states

> Dear Jack,
>
> Due to Konitzs' [sic] dishonest activites [sic] with me and defaulting on Contracts I am advising you that I will not allow any of his equipment, men, or any of his associates to be on my property from this day November 19, 1984 forward.

11

> Also you will not deliver or have delivered, or be active in any activities in furnishing any materials to Konitz on any of his jobs in this area from this day forward.
>
> I just ordered his equipment off my property a few minutes ago, and that is the way it will be from this day forward.
>
> The only way this situation will be changed is by your communication from you to me receiving a document in writing, giving me full detail of the conditions and activities that may take place and etc.
>
> Sincerely,
>
> Francis Tindall

Slanderous words are spoken words, whereas libelous words are written. Therefore, the letter cannot by definition be slanderous per se, however, this Court must nonetheless determine whether the District Court erred when it determined that the letter was libelous per se.

Libel is defined in our statutes under § 27-1-802, MCA, as

> a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.

This Court considers several interpretative rules when determining whether words are libelous per se. These rules require that the defamatory words be construed according to their usual, popular and natural meaning and their common acceptance in society; the words must also be viewed by the court without the aid of special knowledge possessed by the

parties concerned; the words must be susceptible of only one meaning and that meaning must be opprobrious; and the words must also be construed in their entirety and with reference to the entire document. Wainman v. Bowler (1978), 176 Mont. 91, 94, 576 P.2d 268, 270. When interpreting the libel statute, this Court has also stated that if the alleged libelous words impute dishonesty or corruption they are libelous per se. Manley v. Harer (1925), 73 Mont. 253, 260, 235 P. 757, 759.

In the present case, Tindall's letter stated explicitly that Konitz had conducted dishonest activities with him and had defaulted on contracts. In light of the letter as a whole, and the business context in which it was addressed, the District Court did not err in concluding that Tindall's November 19, 1984 letter to Morgenstern was libelous per se.

The next issue raised on appeal is whether the District Court erred in concluding that Tindall is liable for punitive damages.

In the District Court's October 17, 1988 order, the court found that Tindall's actions were malicious and that as a result he should be subjected to punitive damages. However, the court also concluded that a hearing should be held on the assessment of punitive damages. The court subsequently held a hearing, and on May 12, 1989, the District Court ordered Tindall to pay $8,500 in punitive damages.

The statutes that govern the granting of punitive damages are §§ 27-1-220 and -221, MCA. Section 27-1-220(1), MCA, allows a judge or jury to award punitive damages for the purpose of punishing a defendant. Section 27-1-221(1), MCA, states that "reasonable punitive damages may be awarded where the defendant has been guilty of actual fraud or actual malice." The statute also specifies that when awarding

13

punitive damages the judge must clearly state the reasons for making the award in the findings of fact and conclusions of law. In particular, the findings and conclusions must demonstrate a consideration of each of the following matters:

> (i) the nature and reprehensibility of the defendant's wrongdoing;
>
> (ii) the extent of the defendant's wrongdoing;
>
> (iii) the intent of the defendant in committing the wrong;
>
> (iv) the profitability of the defendant's wrongdoing, if applicable;
>
> (v) the amount of actual damages awarded by the jury;
>
> (vi) the defendant's net worth;
>
> (vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
>
> (viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
>
> (ix) any other circumstances which may operate to increase or reduce, without wholly defeating, punitive damages.

Section 27-1-221(7)(b), MCA.

In its findings of fact and conclusions of law regarding punitive damages, the District Court addressed each of these issues. The court found that Tindall acted with malice; that Konitz's actual damage was $7,500; that Tindall's net worth was $330,000; that no evidence existed of any previous wrongdoing by Tindall; and that Tindall would reap financial gain through his actions. When addressing the

14

nature, reprehensibility, and extent of Tindall's wrongdoing, the court stated the following:

> 3. That Francis M. Tindall is guilty of menace and duress, maliciously imposed upon Thomas Konitz in the execution of the Personal Service Contract; that Francis M. Tindall published a letter with the purpose of destroying a lawful business arrangement between Thomas Konitz and Jack Morgenstern, which letter was libelous and slanderous per se and Thomas Konitz is entitled to punitive damages as follows:
>
> a. That Francis M. Tindall wrongfully used his "clout" which fully amounted to duress to force Thomas Konitz to sign the Personal Service Contract of November 16, 1981; that said action by Francis M. Tindall was reprehensible; that Francis M. Tindall had the ability to carry out the threats made to Thomas Konitz to ruin the business of Thomas Konitz; that Francis M. Tindall attempted to carry out those threats, which the publication of the libelous letter of November 19, 1984 was but one example.
>
> . . .
>
> c. That the actions of Francis M. Tindall were in part to frighten Thomas Konitz and force him to sign the Personal Service Contract in order for Tindall to reap financial gains.
>
> d. That the actions of Francis M. Tindall were intentional.

The record supports these findings and therefore the District Court did not err in determining that Tindall should pay $8,500 in punitive damages.

The last issue raised on appeal is whether the District Court erred in refusing to hear testimony regarding excessive

15

drinking by Konitz at the time he signed the personal service contract.

The personal service contract was void for lack of consideration. We therefore do not need to address Konitz's mental state at the time he signed the contract.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16